IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**BETTY ANN LEVY,** **PLAINTIFF,**

**VS.** **CIVIL ACTION NO. 3:03CV176-P-A**

**BAPTIST MEMORIAL HOSPITAL-
NORTH MISSISSIPPI,** **DEFENDANT.**

## MEMORANDUM OPINION

This cause comes before the court upon Defendant's Motion for Summary Judgment [29-1]. Upon due consideration of the motion and the responses filed thereto the court is prepared to rule.

### I. FACTUAL BACKGROUND

On October 15, 2003 Betty Ann Levy, a nurse for almost thirty years, filed the instant lawsuit alleging that her employer, Baptist Memorial Hospital, terminated her because of her age (59) and ultimately hired a younger woman (30) in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. The defendant argues that they fired Levy because of inappropriate racial, sexual, and intimidating conduct and that age had nothing to do with the termination. Levy counters that these reasons, though ostensibly nondiscriminatory, were pretextual. Alternatively, she asserts a mixed-motive termination, *i.e.*, even if the reasons given motivated the termination, age played a significant role. The defendant parries that even if age were a factor, which it does not concede, it would have fired Levy anyway.

The defendant filed the instant motion for summary judgment contending that the plaintiff's proffered evidence of pretext and mixed-motives is insufficient to create a genuine

1

issue of material fact that would lead any reasonable juror to conclude the ultimate question of unlawful age discrimination.

In 1997, Levy was promoted to Head Nurse of the Ambulatory Care Center at Baptist Memorial Hospital – North Mississippi. As the manager of the ACC, Levy's duties included hiring, firing, scheduling, payroll, and maintaining staff and unit discipline. During the relevant time frame, thirteen employees reported to Levy: three secretaries, one LPN, and nine RN's. Levy's immediate supervisor was Heather Boling.

One of the people under Levy's supervision was Melissa Herren whom Levy had hired some time in 2001 as a receptionist. During the course of her employment, Herren was frequently cited for work deficiencies. After one such citation written by Levy, Herren filed a complaint with the hospital's human resources department about Levy's treatment of her. More specifically, Herren alleged that Levy commented to her that "You need to get your tubes tied. Keep your legs closed. You need to take saltpeter. Do you have your birth control patch on?" As a result of Herren's complaint, Baptist suspended Levy and conducted an investigation. Katie Morrissette, Chief Nursing Officer; Barry Wolfe, Human Resources Manager; Heather Boling, Director of Preoperative Services; and Debbie Stroup, Employee Health Nurse/ Nurse Recruiter reviewed Herren's complaint and drafted a list of questions to be addressed to the ACC employees during the investigation.

Through interviews conducted by Stroup and Boling of all the ACC employees under Levy's supervision (except Herren), the defendant learned that eight of them had heard inappropriate statements and/or witnessed inappropriate conduct from Levy. The list of such alleged behavior included, but was not limited to, the following comments or actions by Levy:

- She did not want a black housekeeper to use the ACC restroom and placed an out-of-order sign on the door to keep her out; regarding this, she stated: "I do not want her using our restroom. They can use their own," and "I don't want that damn nigger using my restroom, she makes the bathroom stink."

- Levy stated at some point that "I want to keep the unit white as long as possible."

- Regarding a potential black employee transferring to the ACC, Levy stated: "I do not want a black in here."

- Plaintiff stated that Melissa Herren (white) "sleeps with everything" and her "baby is going to be black."

- In a department meeting, Levy stated: "We are all white and over 21."

- After one employee told Levy of her pregnancy, Levy stated: "You don't need any more kids, you can't take care of the ones you have."

- Levy told an employee that "We don't need any males or childbearing women."

- Levy told one employee that she would lose her job if she got pregnant.

- Levy often made insulting comments about employees' weight.

- Levy told one employee that the employee was only breastfeeding her baby because she wanted the pleasure.

After obtaining these statements and others from the ACC employees under Levy's supervision, Baptist interviewed Levy to determine her position. During this interview, Levy admitted making the following statements:

- M.H.[Melissa Herren] was at the desk and she was talking about pregnancy. I told her the best way was to keep a penny between her legs and keep them crossed after her first child was born.

- Q: Have you ever made the statement that you do not want to hire men, women of childbearing years, and African-Americans?
A: Jokingly, childbearing - Yes, man and African-Americans – No.

See Statement of Betty Levy, Exhibit 13 to Defendant's Motion for Summary Judgment.

Baptist Memorial maintains a policy warning that certain employee conduct may result in immediate termination. Examples of such conduct include: (1) irresponsible behavior; (2) engaging in threatening, intimidating, or coercing behavior; (3) any form of unlawful harassment, *e.g.*, sexual, racial, religious, ethnic, etc.; and (4) use of profanity not within earshot of a patient/guest. It is undisputed that Levy was aware of these rules.

After the staff was given a chance to reaffirm their statements, those statements along with those given by Levy were given to Jim Vandersteeg, CEO of Baptist Memorial Health Care Corporation, and Katie Morrissette, Chief Nursing Officer, to determine what disciplinary action was warranted. Vandersteeg and Morrissette found that substantial inappropriate conduct had occurred and therefore made the decision to terminate Levy in June 2003.

According to Baptist, only three candidates inquired about the Head Nurse position. Based on her experience in the ACC department, Nikki Griffin was hired as Levy's replacement. Nikki Griffin was 30. Levy was 59.

It is Levy's position that she was terminated as a result of a conspiracy among her supervisor Heather Boling and many of the employees under Levy's supervision, especially Nikki Griffin. Plaintiff contends that Griffin had always wanted Levy's job and she used the investigation regarding Herren's allegations as a way to "blacken Levy's name in every possible way." Levy avers that many of Griffin's comments to the investigators were uncorroborated and were several years old. Levy also argues that Heather Boling, Levy's immediate supervisor, had it out for her because Boling did not like the way Levy managed the ACC. On one occasion, Boling received a complaint from Adonis Land, an ACC nurse, regarding Levy. According to Levy, Boling sent Land back to the unit to spy on Levy and to collect information that could be

used against her.

Not only does Levy argue that the conspiracy to get her fired resulted from dislike of her management style, she also argues that her age had either something or everything to do with the termination. She states that the following age-related events occurred:

• Shortly after becoming Levy's supervisor, Boling approached Levy to ask her, "When are you going to retire?"(Boling denies this).

• During a performance evaluation, Boling informed Levy that people Levy's age do not interact well with black people. Further, Boling opined that young people relate better to persons with a different background. (Boling denies these statements).

• In March 2003, when the entire ACC staff was preparing to enter the new ACC facility for the first time, Boling stated: "In with the new processes and out with the old. The old processes do not work, and I'm going to make some changes."

• At a nurse manager meeting in the spring of 2003, Levy alleges that the following statements were made;

> We were in the nurse manager meeting. I was the last to come in, and we were all sitting around. They were waiting and I came in. I made the statement something about, "Here I am," something about the last, – I'm "Here comes the old woman," or something to that statement.
>
> Heather, she picked it up and said – conversation span and she said "We'll change that to just the older nurse, the older nurse."
>
> And then it went around the room who was the oldest nurses there. We was joking – said something about next in line would be Pam Knight, Betty Box.
>
> And then one of the other nurses, Rosie Goolsby said, "I think y'all better get off this subject." Heather said, "We better change it." So they did.

Plaintiff's Deposition at 81.

Finally, there is some dispute about what role Heather Boling played in the decision to terminate Levy. According to the defendant, Boling and Stroup gave the employee statements to Vandersteeg and Morrissette after the conclusion of the investigation without making any recommendation regarding what disciplinary action should be taken. In other words, the defendant's position is that Vandersteeg and Morrissette made the decision, not Boling. The plaintiff argues that Boling did have a hand in the decision. Levy points out that Boling's own testimony at the Mississippi Employment and Security Commission (MESC) hearing and her deposition, as well as the defendant's initial sworn responses to Levy's interrogatories evidence Boling's role in the termination decision. The defendant counters that: (1) Boling unequivocally stated in her deposition that the decision to terminate Levy was made by Vandersteeg and Morrissette and that she had no part in the decision; (2) Vandersteeg and Morrissette confirm this in their depositions; (2) it was inadvertent error on the part of the defendant to list Boling as a person having "participated" in the decision to terminate in the response to the plaintiff's interrogatories; and (3) Boling's testimony before the MESC when she used the term "we" when describing who made the termination is mischaracterized by the plaintiff because at that time, Boling was speaking as Baptist's representative and was not referring specifically to herself.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the

evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the

7

facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

With respect to employment discrimination claims under the ADEA and summary judgment, an employer is entitled to a judgment as a matter of law on the ultimate question of whether it unlawfully discriminated against the plaintiff "if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory." *Vadie v. Mississippi State University*, 218 F.3d 365, 372 (5th Cir. 2000).

**B. Tests for Age Discrimination**

The ADEA provides in relevant part:

It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ....

29 U.S.C. § 623(a). The test for age discrimination in the Fifth Circuit has four stages.

First, the plaintiff must prove a prima facie case of age discrimination by demonstrating "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either (I) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Rachid v. Jack In The Box*, 376 F.3d 305, 311 (5th Cir. 2004).

Second, if the plaintiff proves a prima facie case of age discrimination, the burden shifts

8

to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *Id*. at 312.

Third, if the defendant does give a legitimate, non-discriminatory reason for the termination, the plaintiff must then either offer sufficient proof "to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reasons, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Id*.

Fourth, if the plaintiff proceeds under the mixed-motive alternative and succeeds in proving that age was a motivating factor in the termination, the defendant still prevails by proving that the same decision would have been made regardless of the discriminatory motive. *Id.*

There appears to be no dispute that the plaintiff has met the prima facie case. Levy was discharged, she was qualified to be Head Nurse, she was within the protected class because she was 59, and she was replaced by someone younger, *i.e.*, 30. There is also no dispute that the defendant has proffered a legitimate, non-discriminatory reason for firing Levy, namely, that she was guilty of "inappropriate conduct and lack of effectiveness" which included alleged racial and sexual comments in addition to general intimidation.

Thus, the presumption of discrimination raised by meeting the prima facie case has been rebutted. The burden falls back upon the plaintiff to prove that the legitimate, non-discriminatory reason was either a mere pretext for discrimination based on age or was only part of the reason for the termination – *i.e.*, mixed-motive termination. The burden remains with plaintiff to prove

9

pretext or mixed-motive termination in order to meet her ultimate burden of proving unlawful age discrimination.

Levy argues pretext by pointing to the aforementioned age-related comments made by her supervisor, Heather Boling, *i.e.*, that Boling approached Levy and asked her "When do you plan to retire?"; that Boling referred to Levy as the "old nurse"; and that Boling told Levy during a performance evaluation that she did not think Levy related well to black people because of her age and that Boling believed young people were better able to work with people of a different background. Boling denies that she ever asked Levy when she would retire. Boling also denies the comments about getting along better with blacks depended upon one's age. As explained above, Boling asserts that the "old nurse" comment was completely innocuous given the context.

As previously mentioned, Levy argues that Boling participated in the decision to fire her. Ergo, any age-based comments evincing animus to age are probative of discrimination since they were made by a "decision-maker or someone with influence over the decision." *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 227 (5th Cir. 2000). The defendant disputes that Boling took part in the decision.

**C. Analysis**

Viewing the facts in a light more favorable to the plaintiff, the court will assume for purposes of summary judgment that Heather Boling did in fact play enough of a role in the decision to terminate Levy to make Boling's age-related remarks probative and not mere stray marks.[1] Similarly, the court will assume that Boling did in fact: (1) ask Levy when she would

---

[1] The evidence tends to establish that Boling did not play enough of a role in the decision to fire Levy to make her remarks anything but stray remarks.

10

retire; (2) comment that Levy was the "old nurse" or "older nurse" in response to Levy's own reference to herself as the "old woman"; (3) suggest that older people such as Levy tend to not be able to get along as well with people different than they, such as with black people; and (4) say, "In with the new processes and out with the old. The old processes do not work, and I'm going to make some changes" when moving into the new facility.

Taking into account these assumptions, in addition to considering the plaintiff's generalized allegations regarding a conspiracy to have her fired, the court concludes that the plaintiff has submitted sorely insufficient evidence to prove that her termination for "inappropriate conduct and lack of effectiveness" was a pretext for age discrimination. As discussed above, an employer is entitled to a judgment as a matter of law on the ultimate question of whether it unlawfully discriminated against the plaintiff "if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory." *Vadie v. Mississippi State University*, 218 F.3d 365, 372 (5th Cir. 2000). The Fifth Circuit's decision in *Vadie* was based in part the U.S. Supreme Court majority opinion in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) which held in pertinent part:

> [A] plaintiff's prima facie case, combined with *sufficient* evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a *weak issue of fact* as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Vadie*, 218 F.3d at 374, n. 23 (5th Cir. 2000) (citing *Reeves*, 530 U.S. at 148) (emphasis added).

In the case at bar, the plaintiff's evidence of pretextual and/or mixed-motive age discrimination is clearly weak. With the evidence provided, excluding mere allegations and suppositions, no rational juror could conclude that the plaintiff was terminated for any reason other than that given, *i.e.*, ""inappropriate conduct and lack of effectiveness" of the sort documented and largely undisputed by the plaintiff. Indeed, Levy was an experienced nurse in a managerial position. It is not unreasonable for the hospital to expect its managers to refrain from inappropriate racial and sexual comments and overall antagonistic behavior. It is also perfectly reasonable for the hospital to terminate someone who *it believed* behaved that way, especially when such behavior is prohibited in the employee manual.

It should be remembered that whether or not such a reason is a "good" reason is irrelevant since, given the employment-at-will backdrop, the hospital in this case could have fired Levy for no reason, bad reason, or good reason. As long as they did not unlawfully discriminate against Levy when terminating her, in this case based upon age, then the plaintiff has no case. Levy has put forth insufficient evidence to meet her burden in proving that the reasons given by the hospital were a pretext for age discrimination. Likewise, she has failed to meet her burden in proving that age-discrimination was a reason among others for her termination. Finally, she has proffered no evidence to rebut the defendant's position that it would have terminated her anyway even if age were a factor in her termination. Therefore, there is no *genuine* issue of *material* fact necessitating a trial.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [29-1]

should be granted. Accordingly, an order shall issue forthwith,

**THIS DAY** of May 23, 2005.

                                           /s/ W. Allen Pepper, Jr.
                                           W. ALLEN PEPPER, JR.
                                           UNITED STATES DISTRICT JUDGE